**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION**

| | | |
|---|---|---|
| CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 5, | § § § § § § § § | |
| *Plaintiff,* | § § § | |
| v. | § § § | Civil Action No. 6:16-cv-59 |
| MARY SUE RIDDLE, | § § § | |
| *Defendant.* | § § § § | |
| —————————————— | § § | |
| MARY SUE RIDDLE, | § § § | |
| *Counter-Plaintiff/Third-Party Plaintiff,* | § § § § | |
| v. | § § § | |
| CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 5, | § § § § § § § | |
| *Counter-Defendant/Plaintiff,* | § § § | |
| v. | § § § | |
| BANK OF AMERICA, N.A., OCWEN LOAN SERVICING, LLC, SERVIS ONE, INC. dba BSI FINANCIAL SERVICES | § § § § | |
| *Third-Party Defendants.* | § § § | |

**DEFENDANT'S ORIGINAL ANSWER, COUNTERCLAIM, AND THIRD-PARTY
COMPLAINT**

**TO THE HONORABLE U.S. DISTRICT JUDGE OF SAID COURT:**

NOW COMES, MARY SUE RIDDLE, Defendant, and files this her Original Answer to Plaintiff, CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 5's ("**Christiana Trust**") Original Complaint, and Counterclaim and Third-Party Complaint, and would respectfully show unto the Court as follows, to-wit:

## I.   PARTIES, JURISDICTION, AND VENUE

1.      Defendant lacks sufficient information and knowledge to admit or deny that Christiana Trust is a trustee of a trust.  Defendant lacks sufficient information and knowledge to admit or deny Christiana Trust's citizenship, principal place of business, or Christiana Trust's relationship to Wilmington Savings Fund Society.  Defendant contends that the remaining statements contained in paragraph 1 of Plaintiff's Original Complaint are statements of law to which no response is required.  To the extent the statements of law are allegations, Defendant denies the same.

2.      Defendant admits the allegations contained in paragraph 2 of Plaintiff's Original Complaint.

3.      Defendant admits the allegations contained in paragraph 3 of Plaintiff's Original Complaint.

4.      Defendant admits the allegations contained in paragraph 4 of Plaintiff's Original Complaint.

## II.   FACTS

5.      Defendant admits the allegations contained in paragraph 5 of Plaintiff's Original Complaint.  Defendant states that the Note speaks for itself, and to the extent that Plaintiff's Original Complaint asserts allegations inconsistent with said Note, Defendant denies the same.

6.       Defendant admits to concurrently executing a certain Homestead Lien Contract and Deed of Trust ("**Deed of Trust**").  Defendant denies that the Deed of Trust granted a security interest in certain real property and improvements ("**Property**") located in Tom Green County, Texas, commonly known as 1973 Beaty Road, San Angelo, Texas 76904-7747, and legally described as:

> LOT 14B, BLOCK 1, SECTION 2, GROUP 1 LAKE NASWORTHY
> ADDITION, SAN ANGELO, TOM GREEN COUNTY, TEXAS,
> ACCORDING TO THE MAP OF PLAT THEREOF RECORDED IN
> CABINET E, SLIDE 167, PLAT RECORDS OF TOM GREEN
> COUNTY, TEXAS.

Defendant states that the Deed of Trust speaks for itself, and to the extent that Plaintiff's Original Complaint asserts allegations inconsistent with said Deed of Trust, Defendant denies the same.

7.      Defendant lacks sufficient information and knowledge to admit or deny the allegations in paragraph 7 of Plaintiff's Original Claim.  To the extent required, Defendant denies any remaining allegations in paragraph 7.

8.      Defendant asserts that the Loan Agreement speaks for itself, and to the extent that paragraph 8 of Plaintiff's Original Complaint asserts allegations inconsistent with said Loan Agreement, Defendant denies the same.  To the extent required, Defendant denies any remaining allegations in paragraph 8.

9.      Defendant asserts that the Loan Agreement speaks for itself, and to the extent that paragraph 9 of Plaintiff's Original Complaint asserts allegations inconsistent with said Loan

Agreement, Defendant denies the same.  To the extent required, Defendant denies the allegations. Defendant denies that the lender may enforce the Security Instrument by selling the Property.

10.     Defendant denies that she has failed to make any payments on the Note. Defendant admits that she has failed to make some payments on the Note.  Defendant lacks sufficient information and knowledge to admit or deny whether she has failed to comply with any and all covenants and conditions of the Security Instrument.  To the extent required, Defendant denies the allegations, and asserts that Plaintiff has failed to comply with its covenants and conditions under the Security Instrument.  Defendant states that Plaintiff breached its covenants first. Defendant states that any notices referenced in paragraph 10 of Plaintiff's Original Complaint speak for themselves, and to the extent Plaintiff's Original Complaint asserts allegations inconsistent with said notices, Defendant denies the same.   To the extent paragraph 10 contains any additional allegations, Defendant denies the same.

### III.     CAUSE OF ACTION-JUDICIAL FORECLOSURE

11.     Paragraph 11 of Plaintiff's Original Complaint contains no allegations.  However, to the extent that paragraph 11 does contain allegations, Defendant denies the same.

12.     Defendant denies the allegations in paragraph 12 of Plaintiff's Original Complaint that assert Plaintiff has fully performed its obligations under the Loan Agreement.  To the extent paragraph 12 contains any additional allegations, Defendant denies the same.

13.     Defendant denies that the Security Instrument permits Plaintiff to foreclose on the Property.   To the extent paragraph 13 of Plaintiff's Original Complaint contains any additional allegations, Defendant denies the same.

14.     Defendant denies that Plaintiff is entitled to recover its attorneys' fees in this action.  To the extent paragraph 14 of Plaintiff's Original Complaint contains any additional allegations, Defendant denies the same.

15.     Defendant denies that all conditions precedent have been performed or have occurred.   The instant home equity loan lien is not foreclosure-eligible under the Texas Constitution.  Defendant has notified the lender of the deficiency, but the lender has failed to comply and cure said deficiency within the applicable time-period.

16.     To the extent Plaintiff's final unnumbered paragraph in its Original Complaint contains any factual allegations, Defendant denies the same. Defendant denies that Plaintiff is entitled to recover judgment against Defendant, order for foreclosure, or alternatively for judicial foreclosure, attorneys' fees and costs of suit, and any other relief.

## IV.   AFFIRMATIVE DEFENSES

17.     Without accepting the burden of proof on which Defendant does not have the burden as a matter of law, Defendant sets forth the following affirmative defenses and other defensive matters:

A.      Plaintiff fails to state a claim upon which relief can be granted.

B.      All or parts of Plaintiff's claims are barred by the accord and satisfaction.

C.      All or parts of Plaintiff's claims are barred by release.

D.      All or parts of Plaintiff's claims are barred by limitations.

E.      All or parts of Plaintiff's claims are barred by waiver.

F.      All or parts of Plaintiff's claims are barred by failure to mitigate     its damages.

G.      All or parts of Plaintiff's claims are barred by laches.

H.      All or parts of Plaintiff's claims are barred by assumption of the risk.

I.      All or parts of Plaintiff's claims are barred by Plaintiff's own breach.

J.      All or parts of Plaintiff's claims are barred by waiver and estoppel.

K.      All or parts of Plaintiff's claims are barred by Plaintiff's failure to mitigate its damages.

L.      All of parts of Plaintiff's claims are barred because the deed of trust lien and power of sale are void.

M.      All or parts of Plaintiff's claims are barred by the Texas Constitution because the instant home equity loan lien is not foreclosure-eligible. TEX. CONST. art. XVI, §50(a)(6).

## PRAYER

**WHEREFORE**, Defendant requests that the Court render judgment that Plaintiff take nothing by its Original Complaint, and any additional relief to which Defendant is justly entitled.

## COUNTERCLAIM AND THIRD-PARTY COMPLAINT

### I.      PARTIES

18.      Counter-Plaintiff/Third-Party Plaintiff, Mary Sue Riddle ("**Mary**" or "**Counter-Plaintiff/Third-Party Plaintiff**") is a resident and citizen of Texas.

19.      Counter-Defendant Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, Not in its Individual Capacity but as Trustee of ARLP Trust 5 ("**Christiana Trust**") is a foreign citizen.  Plaintiff/Counter-Defendant has appeared.

20.      Third-Party Defendant Bank of America, N.A. ("**BANA**") is a foreign financial institution and may be served with process through its registered agent, CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

21.      Third-Party Defendant Ocwen Loan Servicing, L.L.C. ("**Ocwen**") is a foreign limited liability company and may be served with process at through its registered agent

Corporation Service Company dba CSC – Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

22.     Third-Party Defendant Servis One, Inc., dba BSI Financial Services ("**BSI**").is a foreign for-profit corporation, with its headquarters in Dallas, Texas, and may be served with process through its registered agent Incorp. Services, Inc., at 815 Brazos, Suite 500, Austin, Texas 78701.

## II.     JURISDICTION AND VENUE

23.     The Court has jurisdiction over this Counterclaim and Third-Party Complaint under federal question jurisdiction.  28 U.S.C. § 1331.   The Court has jurisdiction over the remaining state causes of action under supplemental jurisdiction.  28 U.S.C. § 1367.

24.     Venue is proper in the Northern District Court of Texas, San Angelo Division because the suit concerns title to real property located in Tom Green County, Texas.

## III.     AGENCY AND RESPONDEAT SUPERIOR

25.     Whenever in this petition it is alleged that a Counter-Defendant or Third-Party Defendant did, or failed to do, any act, thing and/or omission, it is meant that Counter-Defendant itself or its agents, officers, servants, employees, vice principals, or representatives either did or failed to do such act, thing and/or omission, and it was done with the full authorization or ratification of Counter-Defendant or Third-Party Defendant, and/or done in the normal routine, course and scope of the agency or employment of Counter-Defendant or Third-Party Defendant or its agents, officers, servants, employees, vice principals, or representatives and/or with actual and/or apparent authority of Counter-Defendant or Third-Party Defendant.

## IV.     FACTUAL BACKGROUND

26.   In 1999, Mary made a cash purchase of certain real property and improvements and a leasehold estate ("**Property**"), commonly known as 1973 Beaty Road, San Angelo, Texas 76904, and more specifically described as:

> LOT 14B, BLOCK 1, SECTION 2, GROUP 1 LAKE NASWORTHY ADDITION, SAN ANGELO, TOM GREEN COUNTY, TEXAS, ACCORDING TO THE MAP OF PLAT THEREOF RECORDED IN CABINET E, SLIDE 167, PLAT RECORDS OF TOM GREEN COUNTY, TEXAS.

The Property is Mary's homestead property.

27.   Mary is currently in possession of the Property.

28.   On or about September 1, 2001, Mary obtained a home equity loan from Wells Fargo Bank for a certain sum.

29.   On or about December 6, 2006, Mary obtained a home equity loan ("**Loan**") from Third-Party Defendant Bank of America, N.A. ("**BANA**") in the amount of $127,000.00. $49,271.79 was disbursed to Wells Fargo, and the remaining $77,728.21 was disbursed to Mary. A true and correct copy of the disclosure statement, is attached as Exhibit A, and is incorporated by reference for all purposes.

30.   Mary executed a Promissory Note ("**Note**") in connection with the Loan. The Note provided that Mary would repay the principal of $127,000.00 over a 25 year term, at a 6.790% yearly interest rate. The Note expressly states, "**THIS LOAN IS AN EXTENSION OF CREDIT OF THE TYPE DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION . . . .**" A true and correct copy of the Note is attached as Exhibit B, and is incorporated by reference herein for all purposes.

31.   Mary also executed a Homestead Lien Contract and Deed of Trust ("**Deed of Trust**") in connection with the Loan. The Deed of Trust is a contract between Mary and the lender. The Deed of Trust expressly states, "**THE EXTENSION OF CREDIT EVIDENCED**

BY THIS HOMESTEAD LIEN CONTRACT AND DEED OF TRUST IS THE TYPE OF CREDIT DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION." The Deed of Trust further states, "**For valuable consideration, Owner grants a lien under Section 50(a)(6), Article XVI, Texas Constitution . . . .**" A true and correct copy of the Deed of Trust is attached as Exhibit C, and is incorporated by reference herein for all purposes.

32.     Mary also executed a Notice Concerning Extensions of Credit in connection with the Loan ("**Notice**").  The Notice was provided to Mary by BANA, and was identified as "A SUMMARY OF YOUR RIGHTS UNDER THE TEXAS CONSTITUTION.  YOUR RIGHTS ARE GOVERNED BY SECTION 50, ARTICLE XVI, OF THE TEXAS CONSTITUTION . . . ." The Notice also expressly states, "LOANS DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION MUST: (1) PROVIDE THAT THE LENDER WILL FORFEIT ALL PRINCIPAL AND INTEREST IF THE LENDER FAILS TO COMPLY WITH THE LENDER'S OBLIGATIONS UNLESS THE LENDER CURES THE FAILURE TO COMPLY AS PROVIDED BY SECTION 50(a)(6)(Q)(x), ARTICLE XVI, OF THE TEXAS CONSTITUTION[.]"  A true and correct copy of the Notice is attached as Exhibit D, and is incorporated by reference herein for all purposes.

33.     From 2011, when Mary began experiencing financial difficulties, through 2016, Mary communicated with BANA and its loan servicer(s) extensively regarding a loan modification.  However, BANA and its loan servicers failed to timely and competently communicate with, and respond to, Mary's requests for a loan modification.  Specifically, BANA and its servicers failed to acknowledge Mary's complete loss mitigation application, evaluate Mary's complete loss mitigation application, transfer Mary's loss mitigation application when

servicing rights were transferred, and provide Mary with a denial letter and the requisite appeal options. Mary ultimately was not able to obtain a loan modification.

34.     In a letter to BANA dated January 25, 2012, Mary informed BANA of its non-compliance with certain provisions of TEX. CONST., art. XVI, § 50(a)(6). Specifically, Mary informed BANA that she was entitled to a copy of the final loan application and all documents executed by Mary at the closing. TEX. CONST., art. XVI, § 50(a)(6)(Q)(v). The letter further informed BANA that Mary was entitled to an acknowledgment from the lender of the fair market value of the homestead property on the date the loan closes, pursuant to TEX. CONST., art. XVI § 50(a)(6)(Q)(ix). BANA failed to comply with the Constitutional and contractual requirements. A true and correct copy of the January 25, 2012 letter is attached as Exhibit E, and is incorporated by reference herein for all purposes.

35.     In a notice dated September 12, 2012, BANA informed Mary that Ocwen Loan Servicing, LLC ("**Ocwen**") would be BANA's loan servicer. Mary subsequently communicated extensively with Ocwen regarding a loan modification. However, in spite of providing Ocwen with numerous certified letters requesting a loan modification, Ocwen informed Mary in an April 4, 2014 "pre-foreclosure referral" letter that Ocwen intended to initiate a foreclosure on the Property on behalf of BANA.

36.     In a letter dated April 21, 2015, Ocwen informed Mary that BSI Financial Services ("**BSI**") would be the new loan servicer for BANA. Mary subsequently provided a written request to BSI to validate and/or verify the instant debt, but BSI failed to properly respond. Mary also subsequently sought a loan modification through BSI, but BSI failed to comply with its statutory obligations with regard to Mary's loss mitigation application.

37.     In a letter dated February 3, 2016, Mary informed BANA that BANA was in violation of the Texas Constitution and loan agreement because the repayment schedule was required to be substantially equal successive periodic installments that equal or exceed the amount of accrued interest for each payment period. *See* TEX. ADMIN. CODE § 153.11 (Joint Financial Regulatory Agencies, Home Equity Lending).  However, BANA failed to correct this defect and comply with the requirements of the Texas Constitution and loan agreement.  A true and correct copy of the February 3, 2016 letter is attached as Exhibit F, and is incorporated by reference herein for all purposes.

38.     Upon information and belief, the Loan was assigned to Christiana Trust, and Christiana Trust is the current owner and holder of the Loan.

## V.     CAUSES OF ACTION

### *Breach of Contract*

39.     All facts and allegations set forth above are incorporated by reference herein for all purposes.

40.     Here, the Note, Deed of Trust, and all Notices executed by Mary at closing constitute a valid and enforceable loan agreement.  All provisions, including all rights and remedies of TEX. CONST., art. XVI, § 50(a)(6) were incorporated in the loan agreement.

41.     However, BANA failed to perform under the terms of the loan agreement by providing Mary a copy of all documents signed at closing.  BANA also failed to acknowledge the fair market value of the homestead property on the date of the loan closing.  Additionally, BANA failed to provide a repayment schedule pursuant to TEX. CONST., art. XVI, § 50(a)(6)(L). *See also* TEX. ADMIN. CODE § 153.11 (Joint Financial Regulatory Agencies).

42.     As a proximate result of BANA's breaches of the loan agreement, Mary has suffered damages.

## *Violations of the Texas Debt Collection Practices Act ("TDCA")*

43.     All facts and allegations set forth above are incorporated by reference herein for all purposes.

44.     Mary is a "consumer" within the meaning of TEX. FIN. CODE § 392.001, and the debt in question relating to the property is a "consumer debt" within the meaning of such statute because the debt is an obligation for personal, family, or household purposes. *See* TEX. FIN. CODE §392.001(1) & (2). "Debt collector" is defined as the act or practice "in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." This definition includes a creditor/mortgagee who is collecting its own debt. *Gomez v. Wells Fargo Bank, N.A.*, No. 3:10-CV-0381-B, 2010 WL 2900351 at * 4 (N.D. Tex. July 21, 2010) (citing *Monroe v. Frank*, 936 S.W.2d 654, 660 (Tex. App.—Dallas 1996, writ dism'd w.o.j); *Waterfield Mortg. Co. v. Rodriguez*, 929 S.W.2d 641, 644–45 (Tex. App.—San Antonio 1996, no writ)). Thus, BANA is a debt collector participating in debt collection. *See id.* § 392.001(5) ("'Debt collection' means an action, conduct, or practice in collection, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor.").

45.     The acts, omissions, and conduct of Counter-Defendant and Third-Party Defendants, as alleged above, constitute violations of the following provisions of the TDCA:

"Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, *a debt collector may not use a fraudulent, deceptive, or misleading representation* that employs the following practices: *using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.*" TEX. FIN. CODE § 392.304(a)(19);

"Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, *a debt collector may not use a fraudulent,*

*deceptive, or misleading representation* that employs the following practices: *misrepresenting the character, extent, or amount of a consumer debt*, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." TEX. FIN. CODE § 392.304(a)(8);

"In debt collection, a debt collector may not use unfair or unconscionable means that employ the following practices: *collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation* unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." TEX. FIN. CODE § 392.303(a)(2); and

"In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices: *threatening to take an action prohibited by law*." TEX. FIN. CODE § 392.301(a)(8).

46.     Pursuant to such violations of law, Mary entitled to relief provided by TEX. FIN. CODE § 392.403, including but not limited to (1) recovery of all actual damages sustained as a result of violations of such provisions of the TDCA; (2) all actual direct and indirect economic damages, including but not limited to damages for loss of credit and damage to credit reputation; and (3) damages for mental anguish and emotional distress.  Additionally, Mary seeks damages resulting from payment of excess or additional interest, and any consequential damages.

47.     Also, pursuant to TEX. FIN. CODE § 392.403, Mary is entitled to recover her attorneys' fees reasonably related to the amount of work performed and costs, for all actions in the trial court, the Court of Appeals, and the Supreme Court.

## *Violations of the Fair Debt Collection Practices Act ("FDCPA")*

48.     All facts and allegations set forth above are incorporated by reference herein for all purposes.

49.     The Fair Debt Collection Practices Act (**"FDCPA"**) is a comprehensive statute which prohibits a catalog of activities in connection with the collection of debts by third parties. *See* 15 U.S.C. §1692 *et seq.* The FDCPA imposes civil liability on any person or entity that

violates its provisions, and establishes general standards of debt collection and provides for specific consumer rights. *See* 15 U.S.C. §1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

50.     In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. 15 U.S.C. § 1692g(a) requires a debt collector within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing:

> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

51.     Pursuant to 15 U.S.C. § 1692g(b), "If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the

original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

52.     Counter-Defendant and/or Third-Party Defendants failed to comply with the provisions of 15 U.S.C. § 1692g(a)-(b).   As such, Counter-Defendant and/or Third-Party Defendants are liable for civil penalties described in 15 U.S.C. §1692k.

## *Violations of the Real Estate Settlement Procedures Act ("RESPA")*

53.     All facts and allegations set forth above are incorporated by reference herein for all purposes.

54.     Congress enacted RESPA in 1974 in an effort to provide mortgagors "with greater and more timely information" regarding their mortgage and to protect mortgagors from "abusive practices." 12 U.S.C. § 2601(a) (2012).   The instant home equity loan is within the scope of the statute, and thus RESPA applies. *See id.* § 2602. And, mortagees can be vicariously liable for the RESPA violations of their servicers. *See, e.g., Rouleau v. US Bank, N.A.*, No. 14-CV-568-JL, 2015 WL 1757104, at *8 (D.N.H. Apr. 17, 2015)("So the record before the court fails to reveal any statutory, regulatory, or judicial indication that RESPA does not incorporate traditional tort rules of vicarious liability. On this record, applying the standard discussed above, the court must conclude that RESPA does, in fact, incorporate those rules[.]").

55.    RESPA is codified at 12 U.S.C. § 2601-2617 *et seq.* and located at 12 C.F.R. § 1024 (Reg. X), sets forth certain requirements for mortgage loan servicers. Federal courts have construed RESPA as a consumer-protection statute, and as such, RESPA is to be liberally construed to best serve Congress' intent. *Geoffrion v. Nationstar Mortgage, LLC*, ---F.Supp.3d---, 2016 WL 1598840, *11-12 (E.D. Tex. April 21, 2016).

56.    Pursuant to 12 C.F.R. § 1024.41, loan servicers are required to take certain actions regarding a borrower's loss mitigation application. A borrower can enforce the servicer's obligations under 1024.41 pursuant to 12 U.S.C. § 2605(f).

57.    Third-Party Defendants failed to comply with their RESPA obligations under 12 C.F.R. §1024.41. For these violations, Mary is entitled to recover her actual damages, attorneys' fees, and court costs.

### *Suit to Quiet Title*

58.    All facts and allegations set forth above are incorporated by reference herein for all purposes.

59.    "The elements of a suit to quiet title are (1) plaintiff has an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the defendant's claim, though facially valid, is invalid or unenforceable." *Montenegro v. Ocwen Loan Servicing, LLC*, 419 S.W.3d 561, 572 (Tex. App.—Amarillo 2013, pet. denied).

60.    When an instrument is void, a quiet-title action can be brought at any time to set it aside. *Wood v. HSBC Bank USA, N.A.*, No-14-0714, 2016 WL 2993923, at *4 (Tex. 2016); *Slaughter v. Qualls*, 162 S.W.2d 671, 674 (Tex. 1941). "[H]ome-equity liens securing constitutionally noncompliant loans are invalid before the defect is cured, [so] we also hold that

no statute of limitations applies to cut off a homeowner's right to quiet title to real property encumbered by an invalid lien under section 50(c)." *Wood*, at *6.

61.     Counter-Plaintiff/Third-Party Plaintiff is in possession of the Property, and has legal title to the Property.  Counter-Plaintiff's/Third-Party Plaintiff's title is affected by Counter-Defendant's claim of a foreclosure-eligible home equity loan lien.  And, while said claim appears facially valid, because the loan does not comply with the litany of exacting terms found in TEX. CONST., art. XVI, § 50(a)(6)(A)-(Q), the lien is actually invalid and void.

## VI.    REMEDIES

### *Declaratory Judgment*

62.     All facts and allegations set forth above are incorporated by reference herein for all purposes.

63.     There exists a justiciable controversy between Counter-Plaintiff/Defendant and Plaintiff/Counter-Defendant.

64.     Pursuant to FED. R. CIV. P. 57 and 28 U.S.C. §§ 2201 and 2202, Counter-Plaintiff/Defendant seeks a declaratory judgment from the Court that the purported home-equity lien Counter-Defendant/Plaintiff seeks to foreclose is invalid. TEX. CONST., art. XVI, §50(c)("No . . . lien on the homestead shall ever be valid unless it secures a debt described by this section.").

65.     Pursuant to Tex. Const., art. XVI, § 50(a)(6), a home equity loan must satisfy a litany of requirements "if a lender wants the option to foreclose on a homestead upon borrower default. *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 478 (Tex. 2016).  Counter-Plaintiff/Defendant asserts that the fair market value of her homestead was not acknowledged and provided at the date the loan closed. TEX. CONST., art. XVI, §50(a)(6)(Q)(ix).  Therefore, the purported lien does not "secure a debt described by this section." TEX. CONST., art. XVI, §50(c).

66.     Counter-Plaintiff provided a notice of said deficiency to BANA on or about January 25, 2012 and February 3, 2016.  However, BANA failed to cure the deficiency and comply with the requirements of the Texas Constitution.  Therefore, the Court should declare that the instant home equity loan lien is invalid and void.  TEX. CONST., art. XVI, §50(c).

### *Forfeiture*

67.     "[B]orrowers may access the forfeiture remedy through a breach-of-contract action based on the inclusion of those terms in their loan documents, as the [Texas] Constitution requires to make the home-equity lien foreclosure-eligible." *Wood v. HSBC Bank USA, N.A.*, No-14-0714, 2016 WL 2993923, at *3 (Tex. 2016).

68.     For a home equity loan lien to be foreclosure-eligible, it must comply with the terms and conditions of the Texas Constitution.  TEX. CONST., art. XVI, § 50(a)(6)(A)-(Q).  Pursuant to TEX. CONST., art. XVI, § 50(a)(6)(Q)(x), a lender must correct a failure to comply with the Constitutional requirements for a Texas Home Equity Loan, within sixty (60) days of being notified by the borrower.  Should the lender fail to timely comply and correct the complained-of deficiency, the lender or holder "shall forfeit all principal and interest . . . ." TEX. CONST., art. XVI, § 50(a)(6)(Q)(x).

69.     "The obvious intent behind the forfeiture remedy as a whole is to encourage lenders to correct loan infirmities under the threat of the stiff punishment of forfeiture." *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 481 (Tex. 2016).  "[I]f a lender fails to meet its obligations under the loan, forfeiture is an available remedy only if one of the six corrective measures can actually correct the underlying problem and the lender nonetheless fails to timely perform the relevant corrective measure." *Id.* at 482.[1]

---

[1] *But see, Garofolo*, 497 S.W.3d at 489 (Boyd, J., dissenting)("[E]ven if the holder's compliance with subsection (f) were futile, irrelevant, or otherwise inapplicable, the result under the plain language of the security instrument would

70.    Counter-Plaintiff/Third-Party Plaintiff notified BANA of certain correctable deficiencies on January 25, 2012.  However, BANA failed to timely correct the deficiencies. Counter-Plaintiff/Third-Party Plaintiff notified BANA of certain correctable on February 3, 2016. However, BANA failed to timely correct the deficiencies.

71.    As a remedy for said breach of the loan agreement, Counter-Plaintiff/Third-Party Plaintiff seeks forfeiture of all principal and interest.

***Accounting***

72.    Mary requests an Order for an accounting of all transactions on the instant loan.

## VII.    DAMAGES

73.    As a proximate result of the above, Mary has incurred, or will incur the following actual damages:

A.    Reasonable and necessary attorney's fees and costs in the proceedings before this court, and those fees required for any appeal to the Court of Appeals, and thereafter to the Supreme Court;

B.    The loss of creditworthiness;

C.    Mental anguish and acute psychic trauma;

D.    The value of the time lost in attempting to correct Counter-Defendant's and Third-Party Defendants' errors; and

E.    Exemplary damages.

## VIII. CONDITIONS PRECEDENT

74.    All conditions precedent to Mary's claims for relief have been performed or have occurred.

## IX. DEMAND FOR JURY

75.    Mary demands a jury trial and tenders the appropriate fee.

---

be to require forfeiture, not excuse it . . . it is the lender's failure to comply with its obligations that triggers the

## X.   NOTICE OF INTENT TO USE DEFENDANTS' DOCUMENTS

76.     Mary hereby gives notice of her intention to use at trial or any hearing any document produced by Counter-Defendant and/or Third-Party Defendants in response to written discovery.

## XI. PRAYER

**WHEREFORE,** Counter-Plaintiff/Third-Party Plaintiff requests that:

    a.  The Court declare that the Security Instrument/Deed of Trust is invalid and void lien, and Counter-Defendant should be enjoined from attempting to foreclose on its secondary home equity lien.

    b.  The Court find that Counter-Defendant/Plaintiff and Third-Party Defendants breached the loan agreement.

    c.  The Court find that as a remedy to Counter-Defendant's/Plaintiff's and Third-Party Defendants' breach of the loan agreement, Counter-Plaintiff/Defendant is entitled to recover the forfeiture of all principal and interest on the loan.

    d.  The Court finds that the conduct of Counter-Defendant/Plaintiff and Third-Party Defendants was so deplorable that Counter-Plaintiff/Defendant is entitled to exemplary damages.

    e.  Counter-Plaintiff/Third-Party Plaintiff recovers her actual damages, out-of-pocket damages, including but not limited to damages for clouding the title/slander of title concerning said residence, harm to credit reputation, credit worthiness, and credit history, mental anguish, emotional distress, anxiety, depression, humiliation, and the value of time lost trying to remedy the problem, against Counter-Defendant/Plaintiff and Third-Party Defendants.

    f.  Counter-Plaintiff/Third-Party Plaintiff has reasonable and necessary attorneys' fees in this action and resulting writs or appeals; or, in the alternative, Counter-Plaintiff's/Third-Party Plaintiff's attorneys have costs of court and reasonable and necessary attorneys fees in this action and resulting writs or appeals, and the same be taxed as costs and ordered paid directly to Counter-Plaintiff's/Plaintiff's attorneys, who may enforce the order for fees in their own name.

---

forfeiture remedy—not its failure to correct its failure to comply.").

g.  Counter-Defendant and/or Third-Party Defendants be ordered to render an accounting to Counter-Plaintiff/Third-Party Plaintiff of the amounts paid and owed.

h.  Such other and further relief in equity and at law to which Counter-Plaintiff/Third-Party Plaintiff may be justly entitled.

Respectfully submitted,

/s/   J.B. Peacock, Jr.
J.B. Peacock, Jr.
State Bar No. 15678500
David M. Vereeke
State Bar No. 20457500
Colin P. Benton
State Bar No. 24095523

**GAGNON, PEACOCK & VEREEKE, P.C.**
1349 Empire Central Drive
Suite 500, Lock Box 56
Dallas, Texas 75247
Telephone:  (214) 824-1414
Facsimile:  (214) 824-5490
Email:  attorneys@gapslaw.com

**ATTORNEYS FOR
DEFENDANT/COUNTER-
PLAINTIFF/THIRD-PARTY PLAINTIFF**

## CERTIFICATE OF SERVICE

The following document was served on Mark D. Cronenwett (and all parties receiving electronic service) per the local and federal rules of procedure via either forwarding same as first-class mail with the United States Postal Service or by causing same to be filed in this case via electronic transmission via portable document format (.pdf) to the EM/ECF Internet web portal for this Court in this Case on 13th day of February, 2017.

/s/   J.B. Peacock, Jr.
Of Gagnon, Peacock & Vereeke, P.C.